# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL MARIA LUCIO, <br><br>Plaintiff, <br><br>v. <br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br>Defendant. | **1:16-cv-502 GSA** <br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF ISABEL MARIA LUCIO** |

**I.      INTRODUCTION**

Plaintiff, Isabel Maria Lucio ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter

---
[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 22 and 29). Upon a review of the entire record, the Court finds that the ALJ's decision is based on the correct legal standards and is supported by substantial evidence. Accordingly, the Court AFFIRMS the agency's disability determination and DENIES Plaintiff's appeal.

## II.  FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

On June 24, 2010, Plaintiff filed an application for DIB claiming disability beginning June 24, 2010, due to diabetes, lower leg and back pain, obesity, and asthma. AR 14; 217; 286. The parties agree that the Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 22, pg. 2 and Doc. 29, pg. 2). Therefore, this appeal is a review of Administrative Law Judge Judson Scott's ("ALJ") decision issued on September 27, 2013, which is considered the Commissioner's final order. See, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 28-39. Plaintiff is challenging the ALJ's credibility determination.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. Relevant portions of the record will be referenced in the discussion where appropriate. AR 370-687.

### C. Summary of Relevant Testimony

There were three hearings in the case: April 16, 2012 (AR 49-120); April 24, 2013 (AR 121-139); and September 19, 2013 (AR 690-742). The case was continued to get additional documentation and to receive medical testimony. Plaintiff (AR 51-77; 134-136; 690-727), her daughter Erica Vierra (AR 105-116); Dr. Savage (AR 77- 104) and vocational expert Behnush Barzegarian all testified. (AR 727-742).

On April 16, 2012, Plaintiff testified she began having difficulty walking approximately two years ago. She also experienced all-over body pain, as well as decreased strength about a year and a half ago. AR 83-84. At the time of the hearing, she could only walk approximately thirty feet before experiencing pain. AR 59. She had been ambulating with a cane for approximately

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 9 and 10).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

four to six months. AR 59; 82-83. She also needed to alternate between sitting and standing, and she frequently needed to lie down. AR 61-62. She sometime rests for approximately half of the day. AR 64. Additionally, she has pain in her upper extremities, as well as carpel tunnel syndrome, which causes difficulty grabbing and holding objects. 70-71. Her daughter helps with maintaining her hygiene, dressing, brushing her hair, cooking and using utensils. AR 71-73.

One year later at the hearing on April 24, 2013, Plaintiff was using a walker. AR 136. The hearing was continued to obtain more information about Plaintiff's medical condition.

At the hearing in September 2013, Plaintiff indicated that her pain had gotten worse in her back. AR 701. She complained of stabbing, aching, burning pain, as well as tingling in both of her legs. AR 704. Both legs hurt but the pain is more severe in her right leg. AR 700-704. She was seeing a physician's assistant, and sometimes her doctor (Dr. Brazil). She was prescribed Ibuprofen, Hydrodone, Norco, Celebrex, Elavil, and Norco. AR 708-709.

In addition to her physical symptoms, Plaintiff also suffered from anxiety and depression and she was unable to leave her house. AR 708-710. She was seeing Dr. Alfafara to treat her mental health issues. AR 708.

With regard to her physical abilities, she was only able to walk for fifteen minutes with a walker if she absolutely had to, and would be unable to walk any distance without the walker. AR 718-720. She has a cane but only uses her walker because the cane no longer supports her. AR 721-722. She is able to feed herself with modified utensils, however, she continues to need assistance cutting up her food. AR 722.

### III. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
> 42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## IV. **SUMMARY OF THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2015. AR 29. He noted that Plaintiff had not engaged in substantial gainful activity since January 1, 2011, her alleged onset date. AR 29. Further, the ALJ identified diabetes mellitus, degenerative disc disease of the lumbar spine, chronic pain syndrome, asthma, morbid obesity, depressive disorder, and anxiety disorder as severe impairments. AR 14. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 30-31. As part of his analysis, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible. AR 30-38.

The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work as defined in 20 CFR § 404.1567(b), except that she could only: stand/walk for four out of eight hours; sit for six out of eight hours, and have a sit/stand option at will (but not requiring a cane or walker with the sit-stand option); occasionally reach overhead bilaterally; frequently reach at shoulder level and below bilaterally; frequently use

manipulative abilities bilaterally; frequently use foot controls bilaterally; frequently use postural manipulations, but could only occasionally climb stairs and ramps and never climb ladders, ropes or scaffolds; perform no more than thirty to thirty-five degrees of sustained forward stooping, but would be able to transition from sitting to standing by way of stooping; no exposure to concentrated dust, gases and fumes above street levels of concentration; frequently encounter environmental restrictions; occasionally work at unprotected heights or around hazardous moving machinery; perform simple repetitive one to three step tasks; have frequent contact with coworkers and supervisors; and occasional public contact. It was also determined that she needs a low stress occupation which the ALJ defined as few changes in the work or its setting, and few decisions required. Finally, he found that Plaintiff may be off task up to five or ten percent of the workday. AR 31.

At step four, the ALJ determined that Plaintiff could not perform her past relevant work as a home care provider or as a housekeeper. AR 38. Alternatively, at step five, the ALJ considered the testimony of a vocational expert and concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform including a marker, a sorter, and a packer. AR 38-39. The ALJ therefore concluded Plaintiff was not disabled. AR 39.

## V. THE ISSUES PRESENTED

Plaintiff argues that the ALJ failed to properly evaluate her testimony. Specifically, she contends that the sole reason he gave to find her not credible was that the medical evidence did not support her subjective complaints, which is erroneous as a matter of law. She requests that the case be remanded for an award of benefits, or alternatively, that the case be remanded for further proceedings. (Doc. 22, pgs. 5-10). In Opposition, the Commissioner argues that the ALJ's credibility determination is supported by substantial evidence. She contends that in addition to the lack of objective medical evidence to support her symptoms, the ALJ also relied on the fact that Plaintiff did not consistently seek treatment, and she responded positively to the treatments she did receive. As such, the ALJ's decision should be affirmed. (Doc. 29, pgs.5-10).

## VI. THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d

1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VII. DISCUSSION

### A. The ALJ Properly Discredited Plaintiff's Subjective Complaints.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id*.; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[4] Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

---

[4] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016) and 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Although Social Security Rulings "do not carry the force of law," they "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
  As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, 862 F. 3d 987, 995 n.5 (9th Cir. 2017) see also *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p became effective after the issuance of the ALJ's decision and the Appeals Council denied review in the instant case. It is unclear whether SSR 16-3 applies retroactively. However, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective complaints in this case meets the guidelines set forth in both SSR 16-3p and its predecessor, SSR 96-7p.

testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

In her brief, Plaintiff contends that the sole reason the ALJ gave for finding her not credible was because the objective medical evidence did not support her allegations of pain. In doing so, she argues that the ALJ discredited Plaintiff's allegations only because there was a lack of objective medical evidence supporting her claims and that the ALJ separately noted that Plaintiff improved on medication when assessing the RFC. Thus, Plaintiff appears to argue that the ALJ made two separate findings: one for credibility, and one for formulating the RFC. (Doc. 22, pgs. 7-10). However, these findings are not mutually exclusive in this decision, nor is the Plaintiff's characterization of the ALJ's reasoning complete. To the contrary, the ALJ folded the credibility determination into the formulation of the RFC. For example, early in the decision when formulating the RFC, the ALJ noted he considered symptoms to the extent that they were consistent with the objective medical evidence and also found Plaintiff was not entirely credible. AR 31-33. He then completed a thorough summary and evaluation of the medical evidence. After doing so, he noted that the RFC was "supported by the substantial weight of the medical evidence that shows degenerative disc disease of the lumbar spine, widespread body pain, improvement with medication, and lack of significant mental health treatment and the [Plaintiff's] decreased psychiatric symptoms with medications." AR 37-38.

To support these findings, the ALJ cited to several examinations that revealed normal

findings. For example, the ALJ pointed out that other than limited spinal range of motion and tenderness upon palpation, physical examinations were largely normal. AR 33; 495; 499; 500. Similarly, Plaintiff displayed full ranges of motion in all joints, some tenderness, excellent grip strength, and reduced lumbar ranges of motion. AR 33; 505; 566; 568. 20 C.F.R. § 404.1529(c) (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96 7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

He also concluded that several doctors had determined Plaintiff remained capable of work despite her impairments. AR 35-36. For example, consultative examiner Dr. Dozier found Plaintiff capable of performing a range of medium work. AR 35; 448-451. Moreover, three other doctors concluded Plaintiff could perform light work. For example, state agency physician Dr. F. Wilson found Plaintiff capable of a range of light work activity. AR 25; 453-456. Moreover, the ALJ sought testimony from two medical experts: Dr. Savage who gave testimony at the hearing, and Dr. Coleman via interrogatories. Both of these doctors concluded that Plaintiff was capable of a range of light work activity. AR 35-36; 96-100 (testimony of Dr. Savage); 609-614 (Dr. Coleman's assessment). Additionally, after evaluating the evidence, the ALJ noted that Dr. Coleman found that Plaintiff's "physical exams have consistently been entirely normal and have shown no clinical findings suggestive of nerve impingement or radiculopathy or any musculoskeletal disorder." AR 36; 607. Thus, the ALJ's adverse credibility determination is supported by four separate physicians' opinions who all concluded that Plaintiff remained capable of performing work activity. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In addition, the medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found [claimant] could perform a limited range of work—support the ALJ's credibility determination").

Although Plaintiff argues that the ALJ only relied on medical evidence to rebut Plaintiff's allegations of pain, a review of the decision reveals otherwise; the ALJ also discussed other factors when evaluating the medical record. For example, he noted that while there were periods when Plaintiff was experiencing pain, she only went to pain management treatment twice in 2011. AR 34; 624-625 (large treatment gap from Bakersfield Pain Management between May 25, 2011 and August 17, 2012). *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ may consider

an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment). Moreover, when Plaintiff was given Depo-Medrol in August 2011, she reported that the arthritis medication was working. AR 568. She was also taking Lyrica in November 2011, and noted that her fibromyalgia had improved and was partially controlled. AR 34; 562; 564. Cymbalta was prescribed later, and Plaintiff reported that this medication was also somewhat helpful. AR 34; 558. Finally, the ALJ noted that Plaintiff's asthma was relatively well controlled with medication. AR 34; 468-469; *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"), citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

With regard to her psychological symptoms, the ALJ noted that Plaintiff had cancelled two mental health appointments in November and December 2012, and that there was little history of psychiatric treatment. AR 36-37; 642-644; 646. Moreover, Plaintiff reported improvement while on Xanex and Celexa. AR 36-37; 643 Although Plaintiff argues that improvement in her condition does not necessarily undercut her credibility, the medications were somewhat effective. More importantly, the fact that she did not seek mental health treatment for a period of time is a valid basis for finding her not credible. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v Sullivan*, 947 F.2d 341, 346-347 (9th Cir. 1991) (factors to evaluate credibility include medication effectiveness); *Fair v. Bowen*, 885 F.2d at 597; 603-604 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility).

Given the above, the ALJ provided clear and convincing reasons to conclude Plaintiff's subjective symptom testimony was not credible. If the ALJ's finding is supported by substantial evidence as it is here, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Notably, although Plaintiff has argued that the ALJ erred in his credibility determination because he only relied on the medical evidence, she has not cited to documents to support her allegations

of disabling pain. Similarly, she has not argued that the ALJ improperly rejected any doctors' opinions. It is Plaintiff's burden to establish disability. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. She has not done so here. She simply argues she is entitled to benefits because the ALJ's sole reason for finding her not credible was because of a lack of medical evidence. (Doc. 22, pg. 7-10). However, as outlined above, the ALJ relied on other factors (namely Plaintiff's failure to obtain treatment and improvement on medications) as reasons to reject her testimony. Accordingly, the ALJ's credibility determination was proper.

### VIII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Nancy A. Berryhill, Commissioner of Social Security, and against Plaintiff, Isabel Maria Lucio, and close this action.

IT IS SO ORDERED.

Dated: **October 16, 2017**                    **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE